Good morning, Your Honor. Andrew Beeman on behalf of the appellants Robert and Anne Gunderson. Good morning. Your Honor, the heart of Magistrate Judge Chang's decision in this case is at page 24 of his opinion where he writes that defendants acted at the behest of the county whose authority has been affirmed necessarily results in the dismissal of plaintiff's complaint. How does that work exactly? How exactly does that defeat the rights of Bob and Anne Gunderson as holders of an easement by implication to use the shoreline trail? Or under the Cooliana Act or the Highways Act of 1892, why does that excuse the appellee's violation of the Coastal Zone Management Act by blazing a new trail without planning commission approval, which is required under Hawaii RISE Statutes Chapter 205A? The implication of this decision seems to be that anyone who acts at the behest of any government employee is somehow immunized from all liability for his actions. That's not the law. Start with the, a coup, is that the correct pronunciation? A cow, Your Honor. A cow settlement? Yes. That occurred long before your clients acquired this property, correct? Yes, it did. That's correct. In fact, the trail existed long before the Gundersons acquired this property. And the trail, as I understand it, was never to be on the Gundersons' property, right? That's correct. It was always to be on Lot 29, which is owned by Mauna Kea. That's correct. Now, the appellees will tell you that this, that the historical fact of the existence of that trail, Long Trail or Ala Loa, is a myth. Did they walk the trail? They did, with the consent of Mr. Mielke, then the Vice President of Mauna Kea. He walked the trail. I understand they dispute that. Well, they do not. Mr. Mielke has presented no declaration saying there is no admissible evidence at all that Mr. Mielke didn't do that with the Gundersons and their contractor on July 31, 2000. Now, the appellees will tell you that the historical fact of the existence of this archaeologist, Dr. Paul Rosendahl, their former President Bill Mielke, the Supreme Court of the State of Hawaii, and the Congress of the United States all say otherwise. Dr. Rosendahl's 1981 report says that the trail exists and is particularly distinct in the location that is shown on that photograph before you. It's shown in white, and it extends along the entire shoreline before the gloss. This is the location in front of the Gundersons. It is clearly shown in this 1988 photograph in the location that Mauna Kea now refers to as the Gunderson Trail. That's what was reestablished in August of 2000 with Mr. Mielke's consent. Now, when Mauna Kea, the amazing thing about this photograph and the reason I brought it for you today is I showed this same photograph to Magistrate Judge Chang in the courtroom on July 13, 2010, and I pointed that same trail out to him. He didn't say, I don't see any trail, but in his opinion, he says he finds he can't see a trail there. It is as plain as the nose on your face. When Mauna Kea and the county signed the Akau Consent Decree establishing the location of the shoreline trail, Mauna Kea promised to convey the land to the state of Hawaii, but they never did that. The county planning director has absolutely no authority to move this trail. Why would he? It was intended to be a state-owned trail. Can I ask you about that? Yes. Is there anything in the documents that says that Mauna Kea may create only one trail on Lot 29? Yes. What is the reference for a single trail? We believe that is the only correct interpretation of the Akau settlement. What is the language that you rely on that would give it the singularity? It is both in the Akau Consent Decree and also in the Planning Commission's approval from 1982, which basically establishes a single six-foot-wide easement plotted by the Harua Shigeoka's meets and bounds description. That is, there is a single easement path, six feet wide, that is created pursuant to the Akau settlement decree. You interpret that to say that that must mean a trail? Unless you've got two trails that are six feet from one another. That's how we interpret it. Now, with respect to the planning director's authority, one of the points we should have made in our papers is that the planning director, under Rule 21-4 of his own rules, which is at page 145 of Appendix M to our opening brief in the first appeal, has no authority to move the trail. But that makes perfect sense in the context. This was supposed to be a state trail at the time, in 1981. What is also clear from the record is that in 1982, when the elected members of the Hawaii County Planning Commission approved the shoreline setback variance authorizing Mauna Kea to restore the old trail, at the request of Mr. Milkey, they gave no authority to the appointed planning director to change its historic location. It's the planning commission, not the planning director, who has the authority to grant shoreline setback variances, and that's what they did in 1982. Did the trail ever go on Lot 8? Yes. There was a separate trail, which Mr. Gunderson in his declaration calls an ad hoc informal trail, which developed over time. You'll notice the vegetation in 1988 is fairly thick. Those are keawe trees. The vegetation became thinner over time, and an inland trail formed because it was more easily traversable by people who were jogging. Your clients, correct me if I'm wrong, but your clients in Mauna Kea agreed to move the trail so that it was not on Lot 8? That's correct. That is exactly what they agreed to. Did the agreement include a specific location for the trail? It did. In fact, what you... And where in the documents is that? You will find that the day before, I don't have the reference, it's in our brief, but you will find that there was a memorandum dated October 14, 1999, from Mauna Kea's engineers Belt Collins to Mr. Gunderson. The day before he goes hard on the purchase contract, that is the day before his due diligence period expires, in which Belt Collins assures Mr. Gunderson the same thing, that the trail should follow the legally described easement 3. That's consistent with everything that was told to the Gundersons when they spent their money to buy this land. The Gundersons spent millions of dollars to buy the land, and many millions more to design and build a home that could not be seen from the trail, specifically in reliance upon that written promise that was made the day before they went hard under the contract. So, to come back to Judge Chang's decision, even if Mauna Kea later acted at the behest of some nameless bureaucrat in moving the trail to its present location, why aren't they liable to the Gundersons on the promissory estoppel theory? I mean, there's no cogent explanation as to why this collaboration between Mauna Kea and the planning director results in the dismissal of all of these claims, either from the appellees or from Judge Chang. Now, Judge Chang relied upon an integration clause in the sales contract. Mauna Kea never made that argument, and it wasn't something we discussed at the hearing. It was something that Judge Chang came up with after the fact without giving us notice and an opportunity to be heard on the issue. But the integration clause doesn't bar enforcement of this promise. The law on promissory estoppel is clear that the integration clause under circumstances like this doesn't prevent someone from making a claim. If what the court meant to say was that Mauna Kea's performance of its promise was barred by the doctrine of legal impossibility, the legal standard is threefold. First, it would be incumbent on Mauna Kea to show that there was an order issued by the planning director. Second, that that order was lawfully authorized. And third, that Mauna Kea did virtually everything in its power to perform its obligation to the Gundersons. Now, when Judge Chang... Your contention is that as part of the purchase of the property, Mauna Kea agreed to the location of the trail in the precise location your clients want it to be. That's correct. That is, they agreed that the trail should be restored to its historic location. And that is the location shown in the 1988 photograph, the location that Mauna Kea now refers to. And where in the documentation surrounding the purchase and sale of the property does it say that? There's a great deal... It says historic location. I understand that. They refer to... But is there a precise meets and bounds description? At the time, Mauna Kea, in the form of Mr. Mielke and the Gundersons, were aware of... Can we start with a yes or no? I'm sorry, Your Honor. The answer is yes. There's a great deal of documentation to that effect. Specifically... The question was, is there a meets and bounds description of the location of the trail in the place where the Gundersons sued to have it placed there? That was an alternative relief that we sought. Either its historic location or the precise... Can you answer the question? I mean, can you... Well, repeat to me. Yes. Is there a document with the meets and bounds? What is the document? What is the citation? It's the file plan map. And what happened was, when Mr. Gunderson was told that the trail would be restored, he asked for a copy of the subdivision plaque, which they refer to in the County of Hawaii as a file plan map. The file plan map shows easement three as a meets and bounds description, which precisely corresponds to the location of the trail shown in the Akau settlement. So that was the first of many documents... But easement three is not the historic location that you're talking about, correct? It is very close to the historic location. But it is not the historic location. And the reason for that was cogently explained by our expert surveyor, who said... Can you answer yes or no to anything, Counsel? I'm sorry, Your Honor. The answer is it does not correspond precisely. Right. And the reason it doesn't correspond precisely is because the surveyor in 1981, Mr. Shigeoka, used a quick and dirty connect-the-dots method of approximating the location of that trail on the ground. That's why there are slight discrepancies between the historic trail and the meets and bounds description that Mr. Shigeoka prepared. And all of that was explained by the surveyor, whose testimony was utterly disregarded by Magistrate Judge Chang. Your Honor, fundamentally... I'd like to reserve the rest of my time. Fundamentally, the issue here is that the district court was bound to view all of the evidence in this case in the light most favorable to the Gundersens, and to indulge them in every reasonable inference. If you go through the 100 pages that Magistrate Judge Chang wrote, what you will find is very few inferences are drawn in their favor. Very little evidence is viewed in the light most favorable to them. And we believe this case should have been submitted to the jury. Thank you. Thank you. I may reserve the remaining time. Good morning. My name is Mel Miyagi. I'm representing Mauna Kea Development and Mauna Kea Properties. What is not in dispute is that the County of Hawaii determined that the Gundersen Trail was unsafe. That was not an issue. It was something that was observed by Magistrate Chang. If you look at his order, it reflects that in addition to considering what was submitted at the hearing on the motion, he did a site visit with the concurrence of both plaintiff's counsel and myself. We were all there, so he got to see the Gundersen Trail. It is also not disputed to answer your direct question that the Gundersen Trail does not follow the meets and bound description of easement number three, which was described in the Akau settlement. That's not in dispute. So there is a dangerous condition. The Gundersen Trail does not follow the meets and bounds description of the Akau settlement. For whatever reason, it doesn't follow it. I would say that any property owner, even with property which is subject to the Coastal Zone Management Act and subject to the SMA safe for those reasonably expected to use it. The public policy reasons for both the Coastal Zone Management Act as well as the permits allowing it require that Mauna Kea allow public access to this property through a nature trail. However, once a nature trail becomes dangerous, you can't just continue to let people use it without doing anything. To answer, I think, Judge McEwen's first question is, I would refer sort of to something I heard that dealt with the difference between our country and a totalitarian state. That is, what is not expressly forbidden by law is permitted, whereas in a totalitarian state, some people have described it as, unless it is expressly permitted, it is forbidden. I would say that in our country, since it was not forbidden to have an alternate trail to what was set forth in the Akau settlement, it is not a violation of law and it is permitted. Let me ask this question. It's correct, isn't it, that the trail was never to be on the Gundersen's property? Absolutely. Lot A. Absolutely. I'm sorry. I'm sorry, I apologize. Just run through them and then I'll give you all the time you want to respond. So, never to be on the Gundersen's property? Correct. Always to be on Lot 29, isn't it, owned by Mauna Kea? Yes. So, that's not in dispute? Correct. The Gundersen's main complaint seems to be that the current location of the trail, if That is correct. That is correct. Is it possible to relocate the trail in a safe manner where users of the trail cannot view the Gundersen's property? Is that possible? It would only be possible if one were to do major excavation and grubbing. Was that explored by the county? No, it was not. They did not want us to do that. We did not want to fight over that. We believed, as a responsible landowner, in compliance with the various SMA permits and the shoreline setback variance, and the public policy, which is to allow public access to Lot 29. My question doesn't involve public access or anything like that. It's a simple question. Is it possible to accommodate the needs and desires of the Gundersen's and the county's proper concern for safety? It is possible, but it would involve a long process where you would have to have public hearings and permits issued at great expense. So, would you have to go through a whole shoreline management re-permitting process to move that? Yes, because if you use the excavation in particular, that's considered development, so you'd have to get a brand new SMA permit and go through the entire process. Did you ever offer that opportunity to the Gundersen's on condition that the Gundersen's pay the expense of the excavation? That was never offered to them, Your Honor. Do you have any estimate of what that would be? I would be speculating at this point. I am not a development lawyer per se, Your Honor. My partners represented the Mauna Kea when they got the original permits and the like, but I, for lack of a better word, is just a trial lawyer and not a development lawyer. So I couldn't tell you any of those facts. Yes, I understand that, but I didn't realize... But this was not part of what was before the magistrate? Not at all. So let me ask you, one of the big focus of the Gundersen's argument, of course, is that prior to signing and plunking down these millions of dollars, that they were assured that the trial would follow easement three. Now, we do know from Mr. Gundersen's lawyers that there is a slight discrepancy, but what is your response to the fact that they wouldn't have done this if they knew they would be in the situation they're in today, based on Mauna Kea's claimed representations to them? We dispute that those representations were made in the way that the Gundersen's have characterized it. Throughout the record, if you look at the record that we attached to our motion for partial summary judgment, we attached the correspondence that went back and forth between the various consultants and representatives of Mauna Kea directly to the Gundersen's regarding this issue, and the interpretation of these documents is disputed by the Gundersen's, I understand that, and they have submitted their own declarations which say certain verbal representations were made, but the record is very clear that the written communications to the Gundersen's established that they were not going to be able to put the Gundersen trail where they wanted it done, and in fact, it was supposed to be on easement three, and they chose to ignore that and move the trail so that the people who were on the trail would have less of an opportunity to view their property. Would, apart from these written representations, the verbal representations, does that raise a material issue of fact, or how does that fit in to the summary judgment context? I don't believe it ties into the summary judgment at all, because as Judge Chang has pointed out, there's an integration clause in the sales document. It's very clear. Does Hawaii allow extrinsic evidence for ambiguity, Hawaii law? In very, very rare instances, and there's nothing that's cited in any of the cases to you where the facts of this case fit into that. Mr. Miyagi. Yes, Your Honor. Let me see if I get the sequence of events correct. In July of 2000, the Gundersen's, however they do it, moves the trail not from easement three but seaward to the very edge of the cliff, correct? Correct, Your Honor. And it isn't until 2007 that Mauna Kea, the defendant in this case, agrees that the trail should be moved inward, correct? Correct. Why isn't the inaction of Mauna Kea, a contracting party, evidence of how Mauna Kea understood the written contract to affect the party's relations? In other words, the interpretation of the contract for seven years was that the trail was okay to Mauna Kea and to the Gundersen's. I would say that based upon that passage of time, Your Honor, is correct that no one disputed that. However, there were events that occurred in between, and that was people getting injured on the trail and an investigation, if you want to call it, by the county, including the state of Hawaii, through their Na'ahele organization, which deals with the trails, and our people, meaning Mauna Kea's people, went out there because of the knowledge of the people falling, one person dying, another person being injured, that this was now determined to be an unsafe or dangerous condition. And did Mauna Kea tender the defense of any of those injury claims to the Gundersen's? No, the... Mauna Kea didn't say, well, look, Gundersen's, you're the ones who wanted the trail on the border here of the ocean, and you're the ones who are really responsible because you forced our hand. No, there was no... No tender defense. There was no tender defense, if I may, because there was no lawsuit. That makes sense. Was there, when, after the injuries occurred, and the decision was made to relocate the trail, were the Gundersen's consulted? No, they were not. They were just told. Actually, they weren't even told. It was moved, and they observed it, and during the process of it being moved, it's in the record, Mrs. Gundersen came out and expressed her very strong feelings about it to the workers who were relocating it to what we call the county-mandated trail. She was very unhappy. So there had, prior to the injuries, there had been something of an agreement between Mauna Kea and the Gundersen's about trail location. Stated another way, until these injuries occurred, Mauna Kea was perfectly content with the location of the trail as the Gundersen's had made it. No one had made it an issue. That is correct. Mauna Kea had not. The county had not. The public who came and used the trails had not made any issue about it, and then we had the injuries, and the county and the state then advised Mauna Kea that, hey, this is not safe. You should move it, and we moved it at their request. Your opposing counsel said that it's undisputed that when the Gundersen's established the trail prior to the injuries that this was done with the permission of Mauna Kea. Is that correct? No, that is not correct. Is that a disputed fact? That is. It is not disputed that they could move the trail off of their property onto Lot 29. What is at issue was the location. That is correct. So it's a nuance, if you will. Was the location a mystery to Mauna Kea? No, it existed, but we didn't, very frankly, we did not go out with a surveying crew to determine whether or not the trail as they relocated it followed the meets and bounds description of EZ3. Your client, the developer, was perfectly happy with the location of the trail until the county said it had to be moved. Correct. But in the process of moving it, the Gundersen's were not consulted. That is correct. Okay. And I do want to make sure it's perfectly clear that the Gundersen trail is not on EZ3 and it is not just a slight variance. There is significant variance. Otherwise, the Gundersen trail was moved off the Gundersen's property? Yes. When was the trail on the Gundersen's property? Prior to their purchase. During the summary judgment hearing, there was aerial photography besides that, which is before you today, which showed a trail clearly going right across Lot 8, and that was observed and it was very open and obvious to everybody. All right. So, in summary, I mean, to me, there is no doubt that the county had the authority and even the Mauna Kea on its own, once it became on notice that there was a dangerous condition, had an obligation to move the trail to a safe location. I don't know if I can be any more succinct or clearer than that. I think there's no further questions. Thank you. Thank you. Thank you, Your Honor. Very quickly, with respect to the safety issue, Magistrate Judge Chang expressly found that there was an issue of material fact as to the safety, the relative safety of these trails. You may get the impression from what Mr. Miyagi has said, that there was some change in conditions between 1982 and 83, when that shoreline trail was first reestablished in that location, and 2007, when ultimately the trail was moved to its present location. There was no such change in conditions. The condition of that trail, of the shoreline today, is the same as it was shown in the aerial photographs, at least as early as 1988. Now, but again, we had presented a declaration from an expert engineer and an expert in trail safety, Dr. James Kwong, who testified that the existing trail is safe, that it could be made safer by widening it, an option that Mauna Kea did not consider and the county did not consider, among many other options, like closing the trail at night to prevent what happened in 2005. Let me ask you about that. I think all of that is possible. Yes. Anything is possible with money and county permission. The question is, is that required? In other words, simply because there are other alternatives to make it safe, does that really solve the legal issue? Yes, it does, Your Honor. Why? The reason is because in order to rely on the defense of legal impossibility, which is really what we're talking about here, it is incumbent upon the promisee, in this case Mauna Kea, to show that they have taken, that they have done virtually everything in its power to perform its obligations. And Mr. Miyagi has just conceded to you that Mauna Kea didn't want to argue about it with the county, that the Gundersons weren't consulted, that other options weren't explored. See, that's because you characterize this as legal impossibility, but I'm not sure that's really. . . That they're saying legal impossibility. As I read their argument, they're saying we're just relying on the documents, not on legal impossibility. Well, it's not clear at all what defense they rely upon. They just say, well, we talked to the county and they wanted us to do it. Why is that a defense from a legal perspective? There must be some articulable reason why it's a defense. So. . . Well, it's not a defense. I mean, is it permitted for them to do this? That doesn't have to do whether it's a defense. If they're saying that the documents. . . I'm not saying they're right or wrong. I'm just saying, as I hear their argument, they're saying these are the documents, this is where it's supposed to be, this is what's permitted, and within those documents we have authority. And that doesn't have to do with safety. Right. Well, again, safety, the magistrate judge expressly presented a genuine issue of material fact. But is safety really a question? That's my question. Yes, it is, clearly. Because we have expert testimony to the effect that the new trail is unsafe and the new trail is blazed in violation of the Coastal Zone Management Act without the approval of the Hawaii County Planning Commission. But on that whole thing, you didn't really raise those procedural questions as I saw it. Basically, you're arguing a procedural or technical violation. Did you make that argument in the district court? Yes. And, in fact, what happened was a few days before the argument in the district court, the Supreme Court of the State of Hawaii decided a case called the Ala Luke case, which held that contrary to the law that had existed up until that decision, that any citizen may now challenge a decision by a failure to comply with Part 3 of the Coastal Zone Management Act, which is what we have here. And where is the proper – do you file that with the county? You can file an independent lawsuit under Ala Luke. Any citizen may enforce Chapter 205A, Part 3. All right. Your time has expired. Thank you. Thank you, Your Honor. The case just argued of Gunderson v. Mauna Kea is submitted. I'd like to thank both counsel for your argument this morning.
judges: Hawkins, McKeown, Bea